## Bourbon Agricultural Bank & Trust Company, Guardian, et al. v. Miller, et al.

(Decided October 28, 1924.)

### Appeal from Bourbon Circuit Court.

1. Wills—Remainder to Children of Unmarried Man Held Contingent. —Under will devising property in trust for benefit of son, who was unmarried and had no children or descendants at time of execution and death of testator, held, that remainder to his children or descendants was contingent.
2. Wills—Estate of Trustee Commensurate with Powers Conferred.— Estate of testamentary trustee is commensurate with powers conferred by will and purposes to be effectuated by it, and no more, and, trust being executed, trustee's estate ceases; title passing by operation of law to cestui que trust.
3. Trusts—Trustee Will Take Fee Without Words of Limitation or Inheritance when Necessary for Trust.—Trustee will take fee without words of limitation or inheritance when necessary for trust; but, in absence of evidence to show that creation of fee was nec-

essary to effectuate purposes, court will not presume fee was intended.

4. Wills—Testator Devising Estate in Trust and Contingent Remainder Held to Die Intestate as to Fee.—Under will leaving property in trust for benefit of childless son with remainder to his children, held, that trustee was not possessed of fee, and that testator died intestate as to fee which descended to son subject to be defeated if he had children; and, where son died without children, estate descended to the son's heirs.

DENIS DUNDON, HUNT, NORTHCUTT & BUSH and JNO. J. WILLIAMS for appellants.

VIRGIL CHAPMAN and TALBOTT & WHITLEY for appellees.

OPINION OF THE COURT BY COMMISSIONER SANDIDGE—
Affirming.

W. W. Massie and his wife, Anna E. Massie, resided in Bourbon county, Kentucky. There was born to them only one child, William Charlton Massie. Prior to his death W. W. Massie executed a last will and testament. He was survived by his wife and son. His wife died prior to the death of the son and the son died without having married and left no children. Certain property owned by W. W. Massie at the time of his death is in controversy. The collateral kin of W. W. Massie claim it as his heirs, and the collateral kin of William Charlton Massie's mother claim an undivided one-half interest in it as his heirs. The pivotal point upon which the settlement of the controversy turns is the correct construction and interpretation of the will of W. W. Massie. The portions of his will affecting the controversy are as follows:

"Section. 15. I devise to my wife, Anna E. Massie, as trustee, and in the event of her death, to the Security Trust & Safety Vault Company, of Lexington, as trustee, all the property directed by the foregoing sections of this will, particularly 7, 9, 10, 11, 13 and 14 C. D., to pass to the trustees under this section in trust as follows:

"Said trustee shall make said trust estate profitable as far as a trustee can, and out of the profits and proceeds thereof the trustee shall first pay all the expenses in the way of taxes, repairs, improvements, with the cost, if any, of executing this trust; and the trustee under this will may, in the discretion

of said trustee, apply any part of the net income of the real and personal estate or any part of the corpus of the personal estate to the maintenance and support of my son, William Charlton Massie, but no part of the corpus of the real estate shall be so used or applied; and no part of the corpus of the real estate shall be charged with any debt by William Charlton Massie or his trustee.

"The trust herein created shall include and embrace any and all property not otherwise in this will devised or bequeathed, and the trustee shall take and hold the same under this trust.

"At the death of said William Charlton Massie, said trust shall cease, and all the real property embraced in this trust, except such city property as may have been sold under the provisions of this will for reinvestment and all real estate purchased with the trust estate, shall pass to his children, or descendants of his body, free from any debt, claim or liability of said William Charlton Massie; and the said trustee shall likewise, upon the death of said William Charlton Massie, account for the trust estate and pay over or deliver to his children, or descendants of his body all of the trust personal estate remaining in the hands of the trustee, which has not, in the discretion of the trustee, been used for the benefit of William Charlton Massie, or used to pay the expenses of carrying out this trust."

Something over a year subsequent to making the will, testator executed a codicil, and it likewise must be considered in determining the questions involved:

"Section 18.   Having since publishing the foregoing will, purchased 370 acres of land lying in Bourbon county, Kentucky, on the Jackstown turnpike, known as the Sandusky farm, I now devise one-half thereof to my wife, Anna E. Massie, for life, and the remaining one-half to the trustee of William Charlton Massie, to be held by said trustee under the terms, conditions and provisions of section 15 of the foregoing will.

"Section 19.   I also devise to said trustee, to be held upon the terms and conditions and according to the provisions of section 15 of said will, the remainder interest in said one-half of said farm so de-

vised to Anna E. Massie for life, and the remainder interest in all other property devised by the foregoing will to her for life; and not by the foregoing will otherwise disposed of.

"Section 20. If my son, William Charlton Massie, die without leaving any children or descendants of his body, and if my wife, Anna E. Massie, shall survive him, then she shall take, and I hereby devise to her, to be hers absolutely, the remainder interest in all property devised to her for life in this codicil and in the foregoing will, and in addition she shall take and I hereby devise to her, absolutely, one-half of all the property devised in the foregoing will and in this codicil to the trustee of William Charlton Massie."

It is contended by appellants that by W. W. Massie's will he disposed of his entire estate in the property devised by the clauses of the will and codicil quoted above; that he died intestate as to none of same; that upon the death of William Charlton Massie childless subsequent to the death of his mother, Anna E. Massie, and the termination of the trust estate provided for in the will, there was a failure of devises to take the contingent remainder; and that thereupon the estate of W. W. Massie passed as in case of intestacy to the *then* heirs of W. W. Massie. It is contended by appellees that by the will and codicil testator did not devise his entire estate in the property in question; that he died intestate as to same; that upon his death the estate in the property in question which had not been devised by testator passed by inheritance to his son, William Charlton Massie, and, upon the death of William Charlton Massie, passed by inheritance to his heirs, the collateral kin of his father and mother, a moiety to each branch. The court below took the latter view of the question and entered judgment in accordance therewith. This appeal is prosecuted by the heirs of W. W. Massie, who claim the entire estate.

It is patent when we consider the terms of section 15 of the will quoted above that W. W. Massie did not have sufficient confidence in his son, William Charlton Massie, to intrust to his management even an estate for life in the property in question. To protect that property and such interest in same as he was willing for his son to have, testator devised it to a trustee, the duration of the trust estate being limited to life of the son, William

Charlton Massie. The uses to which the trustee might put the property in question were provided for and were limited by the terms of the will. The trustee was invested with the discretion to withhold from the son any or all of the net income from the trust estate or to apply any or all of the net income from the trust estate to the support and maintenance of the son, or to expend any or all of the corpus of the personal trust estate for the support and maintenance of the son. The will expressly declared that the trust estate should cease and terminate with the death of the son. The will further provided that upon the death of William Charlton Massie all the real estate embraced in the trust and all the personal estate embraced in the trust that in the discretion of the trustee had not been paid out for his support and maintenance should pass to the children or descendants of the body of William Charlton Massie.

To arrive at the legal effect of the provisions of the will, we must take into account the facts and circumstances surrounding the parties at the time of the taking effect of the will. When W. W. Massie executed the will in question and at the time of his death when it became effective, William Charlton Massie was unmarried and had no children or descendants of his body. Under these conditions we think it very clear that there was created a life estate in the property in question in favor of William Charlton Massie, which was placed in trust for him to protect it from his indiscretion and lack of business ability and capacity; and that there was created a contingent fee in remainder, contingent upon their being children subsequently born to William Charlton Massie to take the estate. Those to whom the remainder was devised were not in being at the time of the taking effect of the will, hence the estate devised to them was a contingent remainder, and it did not and could not vest in them. We then are confronted with the fact that testator, the owner of the fee in the property in question, devised only an estate for life in same and a contingent remainder. Was this sufficient to pass from testator all of his estate in the property in question or did there yet remain in him an estate in same that he might devise or sell and convey? We are confronted with the further question, since testator neither attempted to nor did devise or convey any further estate in the property in question than that indicated above, did such further estate, if any there remained, pass by inheritance as

undevised estate of testator at the time of his death to his then heir, William Charlton Massie, or did it pass out from testator with the taking effect of his will an estate in abeyance, or an estate *in nubibus,* and so remain, or did it pass to the trustee of the trust estate and remain in him, until the termination of the trust estate and the happening of the event that would determine whether there would be contingent remaindermen to take the estate, and, upon its being determined by the death of William Charlton Massie, by his dying childless, that there was a failure of devisees to take the contingent remainder, then pass to the then heirs of W. W. Massie? ·The questions seem to us to have been settled by previous opinions of this court.    In Coots v. Yewell, etc., 95 Ky. 367, 16 R. 2, 25 S. W. 597, 26 S. W. 179, it appears that Jeremiah Yewell conveyed to his son, Algernon S. Yewell, a tract of land "for and during his natural life and the remainder in fee simple to his children, heirs and legal representatives of the said Sidney, to have and to hold the said tract of land and appurtenances to the said Algernon Sidney Yewell for and during his natural life, and remainder in fee simple to descend to and ·belong and appertain to the children, heirs and legal representatives of the said Sidney Yewell at his death as their absolute estate forever."    The taker of the life estate under that deed was not married and had no children when the deed was delivered to him and subsequently died childless without having had a child born to him.  By the deed in the Coots case the grantor had conveyed an estate for life to his son and a contingent remainder to the children of the son if any there should ever be.   The conditions in that case were exactly the same as are the conditions of the case now before us for determination, except that in the former case the estates were created by deed of conveyance, while in the latter they were created by will.   This court in the Coots case held by the deed there in question the grantor did not part with the fee but that it remained in him and passed by inheritance to his heirs at law.   In that case we held that when a contingent remainder is created by deed the title remains in the grantor until the contingency happens, and if the death of the grantor occurs before the time fixed for the contingency to happen the title passes by inheritance from the grantor to his heirs upon his death.

In Baxter v. Bryan, 123 Ky. 235, 29 R. 658, 94 S. W. 633, the same question was again before this court. In that case Jefferson A. Bryan conveyed to his son, James Baxter Bryan, an estate for life in a certain tract of land with remainder to his children in fee simple. At the time the deed was executed the son was unmarried and childless. The father died prior to the death of the son and the son eventually died without having married and childless. This court in determining the questions presented in that case followed the Coots case, *supra,* and held that the title remained in the grantor until his death, as the contingency provided for had not happened, and that upon his death the title passed to the son as the only heir at law of Jefferson A. Bryan.

The same question was again before this court in Newton, etc., v. Southern Baptist Theological Seminary, 24 Ky. L. R. 2310. In that case William Newton by will devised 120 acres of land to his daughter, Mary, if she should live longer than Lucinda Newton, but, in the event Mary should die before Lucinda, he willed that at her death the land should be sold and the proceeds paid to the Baptist Male School about to open in Owensboro under Prof. Gray. The daughter Mary, to whom the contingent remainder was devised, outlived testator but died before Lucinda. The school mentioned was never organized and never opened at any time. We held in that case that testator did not dispose of the title to the 120 acres of land by the will in question; that the title of same remained in him and passed by inheritance as undevised estate to his only heir, the daughter, Mary, to whom he had willed the contingent remainder. The discussion of the various common law principles involved upon which this court reached its conclusions is set forth elaborately in the opinions in the three foregoing cases. Texts from the common law writers, both Blackstone and Kent, and from Fearne on Remainders were quoted as supporting the conclusions reached. The same rule was followed by this court in Alexander v. DeKermel, 81 Ky. 345; Prior v. Castleman, 9 Ky. L. R. 967; and Owens, et al. v. Burkes, 151 Ky. 162.

Appellants insist, however, that the facts of this case may be distinguished from the facts of the foregoing cases; that a determination of each case must depend largely upon the facts and circumstances surrounding the parties and the peculiar phraseology of the instrument creating the estates; that each will, so to speak, is

a law unto itself; and that by the language of W. W. Massie's will, considered in the light of the circumstances surrounding him when he executed it, all of his estate in the property in question passed from him to the trustee of the trust estate created by it and remained in the trustee until the failure of remaindermen was established and then passed as in cases of intestacy to the then heirs of W. W. Massie. Appellants quote the following sentences from the clause of the will creating the trust estate as sustaining that contention: "The trust herein created shall include and embrace any and all property not otherwise in this will devised and bequeathed and the trustee shall take and hold the same under this trust."

The general rule as to the extent of estate or interest of the trustee in the trust property is well stated in 39 Cyc., page 207, which we quote:

"Where the use is executed by the statute the trustee takes no estate or interest, both the legal and equitable estates vesting in the *cestui que trust;* but where the use is not executed, the legal title passes to the trustee. The extent and quality of the estate taken by the trustee depends largely upon the purposes of the trust and duties imposed thereby, as expressed in the terms of the instrument creating the trust, which the court will so far as possible construe to best effectuate the intention of the creator. The estate of the trustee is commensurate with the powers conferred by the trust and the purposes to be effectuated by it; or in other words the trustee takes exactly that quality of interest, whatever it may be, which the purposes of the trust and its proper execution may require, and no more, and the purposes of the trust being executed, the trustee's estate ceases, the title passing by operation of law to the *cestui que trust.* The trustee will take the fee without words of limitation or inheritance when necessary for the trust; and *a fortiori* if there are words of limitation or inheritance; but in the absence of evidence to show that the creation of a fee was necessary to effectuate the purposes of the trust, the court will not presume that a fee was intended, no words of intention appearing. The question is not whether the testator had used words of limitation, or expressions adequate to carry an estate of inher-

itance, but whether the exigencies of the trust demand the fee simple, or can be satisfied by any, and what, less estate."

Applying that rule and taking into account the language used by testator in creating the trust in question, and defining and limiting the rights and duties and powers of the trustee, the conclusion is inevitable that the question must be settled contrary to appellants' contention. We think it clear that by the sentences of the will quoted by appellants in support of their contention that in speaking of "any and all property not otherwise in this will devised and bequeathed," testator had reference not to the estate in the property devised but rather to the physical objects constituting the property, real and personal, that should pass to the trustee. The execution of the duties imposed upon him by the will creating the trust estate did not require that the trustee should be possessed of the fee in the estate. His duties were limited by the instrument creating the trust to the possession and management of the trust estate only during the life of the *cestui que trust*. Contrary to what ordinarily is the case, testator's will clearly provided that the property embraced in the trust should pass to the contingent remaindermen upon the termination of the trust, not by any act of the trustee which required conveyance from him, but under testator's will and from testator himself. The trust estate was expressly limited to the life of William Charlton Massie and was expressly made to terminate upon his death. We are of the opinion that the creation of the trust estate to protect the life estate of William Charlton Massie from his indiscretion and lack of business capacity did not have the effect of vesting in the trustee the fee in the property in question or to take this case out of the rule laid down in the cases above referred to.

It seems to us that in addition to the reasons given in the opinions above cited, and as a refutation of appellants' contentions herein, the following may be advanced as a perfectly sound reason for holding that by his will W. W. Massie did not dispose of or devise all of his estate in the property in controversy in this action. It will be observed that by the codicil W. W. Massie devised to his wife a second contingent remainder in and to an undivided one-half of the property in question. It could not be maintained that if the wife, Anna E. Massie, had sur-

vived the son, William Charlton Massie, and if at his death he had left no children, Anna E. Massie would not have taken half of the property in question. Testator had devised the life estate to the trustee for the benefit of the son with contingent remainder in fee to his children if any should be born. The subsequent devise to his wife of a second contingent remainder did not have the effect of revoking to any extent any of the devises previously made by testator. They remained just as effective after testator made the subsequent devise to his wife as they were prior thereto. It could not be contended if, subsequent to the codicil added for the benefit of the wife, testator had executed another codicil and by it provided that, in the event his wife should die before his son and in the event his son should die eventually childless, all of the property in question should pass to and become the property of testator's brother John and his heirs forever, that such a devise would not have been perfectly valid. Unquestionably we would hold that upon the death of William Charlton Massie childless, the wife having previously died, the property in question would have passed in fee simple title to John or his heirs. If testator had added such a codicil it would not have had the effect of revoking any previous devise made by him. It would not have taken from or lessened any of the estates in the property in question previously devised by testator, either the trust estate or the contingent remainders. By recognizing that testator might have made further and final disposition of all the property in question without in anywise revoking or affecting the interests in the same he had previously devised, it follows that we recognize that there remained in testator an estate in the property in question that he did not dispose of by his will. By his will he devised only an estate for life and a contingent remainder, neither of which embraces the fee in the property. Following the precedents laid down in the authorities hereinbefore referred to, we hold that the fee remained in testator; that he died intestate as to same and that upon his death it descended by inheritance from W. W. Massie to William Charlton Massie, the fee, however, being subject to be defeated by the happening of the contingency of his having children to take the contingent remainder. We hold that upon the death of William Charlton Massie, coincident with which ended the possibility of there ever being remaindermen to take the contingent remainder, the fee, freed of all encumbrances

and contingencies, descended to William Charlton Massie's heirs, a moiety to the collateral kin of his father and a moiety to the collateral kin of his mother.

These conclusions are in accord with the judgment rendered by the court below, and hence the judgment is affirmed. Whole court sitting.