## Mansur et al. v. Security Trust Co. et al.

June 23, 1939.

King Swope, Judge.

454

Keenon & Kessinger and Winger, Reeder & Barker for appellants.

Field McLeod, Hunt, Bush & Lisle and McDonald & McDonald for appellees.

OPINION OF THE COURT BY JUDGE STITES—Affirming.

This is an appeal from a judgment of the Fayette Circuit Court, sitting in equity. In 1903, Mary Helm died testate. After providing for the payment of her debts and funeral expenses, and making certain specific bequests and devises, she provided for her daughter and her only surviving child, Margaret Helm, in the fourth clause of her will:

> "Fourth. All the balance of my personal estate of every kind, and all of my real estate, I give and devise to the Security Trust and Safety Vault Company of Lexington, Kentucky, in trust for the use and benefit of my daughter Margaret Helm * * *. At the death of my said daughter Margaret Helm if she leaves issue surviving her, then the whole of the aforesaid trust estate, shall be paid over to her issue in such proportion as said issue respectively would take and inherit said trust fund from her under the law of descent and distribution then existing in the state of Kentucky."

In 1936, Margaret Helm died, testate, unmarried, and without issue. Her will provided in part, that:

> "* * * I devise, bequeath, and give all the remainder of my property and estate, of whatever kind and description and wherever situated, including the property held in trust for me by Security Trust Company of Lexington, Kentucky, * * * to Christ Church Cathedral of Lexington, Kentucky, for such good uses and purposes as it may wish to make of it."

The Security Trust Company (previously known as the Security Trust and Safety Vault Company) qualified as executor and trustee under the will of Mary Helm, and as executor of the will of Margaret Helm,

and it is made a defendant in this proceeding. Appellants, who sue on behalf of themselves and all other alleged heirs-at-law of Mary Helm, contest the right of Margaret Helm to pass any interest in the trust property by will. They maintain (1) that Margaret Helm took merely a life estate in the property devised to her under the will of Mary Helm, and that the property descended to the then heirs of Mary Helm under the laws of descent and distribution when Margaret Helm died childless; and (2) that fee simple title lay in the Security Trust Company, as trustee, subject to being divested by the birth of children to Margaret Helm. The chancellor however found that Margaret Helm "took a life estate in the property devised, and that the remainder subject to be defeated upon the contingency of Margaret Helm's having a child or children born, was undevised property, and passed by descent to the only child and heir at law, Margaret Helm, and that she, the said Margaret Helm at her death, had the right to devise the entire fee in the estate by her last will and testament." This appeal followed.

The appellants lean heavily upon the statement of this Court in Barnes v. Johns, 261 Ky. 181, 185, 87 S. W. (2d) 387, 389, that "it is a settled rule in this state, where a testator, by his will, when construed as a whole, gives to a devisee an estate for life, and at the latter's death to any children that he or she might have, and makes no further disposition of his property, the unborn children take a defeasible fee, subject to its being defeated if there are no children born to the devisee, and, if he or she dies without issue having been born, the title to the property so devised does not pass under the will of the testator to any one, but passes under the laws of descent and distribution to the testator's heirs." The opinion cites no authority for the statement that "the unborn children take a defeasible fee" and it is quite apparent that this assertion is inadvertent. The interest of the unborn children becomes vested when they are born. There is no way in which they could have an estate other than a contingent remainder prior to their coming into being. In Herbert's Guardian v. Herbert's Executor, 85 Ky. 134, 2 S. W. 682, 685, 8 Ky. Law Rep. 752, we quoted with approval the following statement from Kent's Commentaries, Volume 4, page 257:

"If a contingent remainder be created in con-

veyances by way of use, or in dispositions by will, the inheritance in the meantime, if not otherwise disposed of, remains in the grantor or his heirs, or descends to the heirs of the testator, to remain until the contingency happens. This general and equitable principle is of acknowledged authority.''

It is the theory of the common law that the inheritance must always reside somewhere in order that there shall always be someone in existence to represent it in actions brought for its recovery and to protect the interest of the heirs. Minor on Real Property, Second Edition, Section 758. The inheritance does not remain in nubibus but remains in the grantor or his heirs, if he be dead, pending the occurrence of the contingency. Coots v. Yewell, 95 Ky. 367, 25 S. W. 597, 26 S. W. 179, 16 Ky. Law Rep. 2; Baxter v. Bryan, 123 Ky. 235, 94 S. W. 633, 29 Ky. Law Rep. 658; Stevens v. Stevens, 221 Ky. 123, 297 S. W. 1104; Walker v. Irvine's Ex'r, 225 Ky. 699, 9 S. W. (2d) 1020; Crawley v. Crawley, 231 Ky. 831, 22 S. W. (2d) 268; Slack v. Downing, 233 Ky. 554, 26 S. W. (2d) 497.

In Bourbon Agricultural Bank & Trust Company v. Miller, 205 Ky. 297, 265 S. W. 790, 794, we had for construction a will which devised the testator's estate to a trustee for the benefit of testator's son with remainder to his children. The son had no children and died intestate. A controversy arose between the heirs of the testator who claimed the entire estate by inheritance from the father and those heirs of the son on the maternal side who claimed a moiety by inheritance from the son. The Court said:

''By recognizing that testator might have made further and final disposition of all the property in question without in any wise revoking or affecting the interests in the same he had previously devised, it follows that we recognize that there remained in testator an estate in the property in question that he did not dispose of by his will. By his will he devised only an estate for life and a contingent remainder, neither of which embraces the fee in the property. Following the precedents laid down in the authorities hereinbefore referred to, we hold that the fee remained in testator; that he died intestate as to same, and that upon his death it descended by inheritance from W. W. Massie [the

father] to William Charlton Massie [the son], the fee, however, being subject to be defeated by the happening of the contingency of his having children to take the contingent remainder. We hold that upon the death of William Charlton Massie, coincident with which ended the possibility of there ever being remaindermen to take the contingent remainder, the fee, freed of all incumbrances and contingencies, descended to William Charlton Massie's heirs, a moiety to the collateral kin of his father and a moiety to the collateral kin of his mother.''

Appellants recognize the rule that the inheritance cannot remain in nubibus but they assert that the estate was vested in the trustee rather than in the heirs of the testatrix. Exactly the same contention was urged in Bourbon Agricultural Bank & Trust Company v. Miller, supra, and the Court there held that the intervention of the trustee made no difference. It was pointed out that the estate taken by a trustee is commensurate with the powers conferred and the purposes to be effectuated. The purposes of the trust being executed, his estate ceases. Appellants, however, seek to distinguish the case from the case at bar because, as they assert, the powers given to the trustee under the will of Mary Helm are much broader than those granted in the Massie will. We are unable to concur in this contention. While the powers given may have been broader, the duration of the estate of the trustee is the same. The trust here involved was not an estate of inheritance but necessarily terminated when its purposes were accomplished. It may be observed that the will of Mary Helm does not limit the interest of her daughter to a life estate. It may well be that testatrix intended that Margaret Helm should take a defeasible fee subject to the trust during her lifetime and subject likewise to the contingency of the birth of any children she might have. Whether we follow this view, or consider simply that the remainder after Margaret Helm's death was undevised property, we must reach the same conclusion—which is that the inheritance was vested in Margaret Helm and she could dispose of it by will.

Judgment affirmed.